**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICHELLE RANKIN,<br>on behalf of Plaintiff and the class<br>members described herein,<br><br>Plaintiff,<br><br>v.<br><br>NINGODWAASWI, LLC;<br>SKYTRAIL SERVICING GROUP LLC;<br>WILLIAM C. "CHENEY" PRUETT;<br>and JOHN DOES 1-20;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 22-cv-1519<br>)<br>)<br>)<br>)<br>)   DEMAND FOR TRIAL BY JURY<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

1.     Plaintiff, Michelle Rankin, brings this action against Defendants (a) Ningodwaaswi, LLC; (b) Skytrail Servicing Group LLC; (c) William C. "Cheney" Pruett; and (d) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Indiana residents.

2.     Plaintiff seeks damages under the Indiana Consumer Credit Code (Count I) and treble damages under RICO (Count II).

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

4.     This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Indiana residents.

5.     Venue is proper because acts to collect the loans impacted Plaintiff in the Southern District of Indiana.

6.      As set forth below, Defendants operate interactive websites through which they sought to and did make loans to Indiana residents. The use of an interactive website which permits Indiana residents (but not residents of specified other states) to apply for loans, along with the making and collecting of loans within the state, establishes a purposeful availment of Indiana and is sufficient to establish personal jurisdiction over the defendants responsible for the site. *Toys "R" Us, Inc., v. Step Two*, 318 F.3d 446, 454 (3rd Cir. 2003).

## PARTIES

7.      Plaintiff Michelle Rankin is a natural person who at all times relevant has resided in Plainfield, Hendricks County, Indiana.

8.      Defendant Ningodwaaswi, LLC is a limited liability company purportedly organized under the law of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("LDF Tribe"). It uses as an address PO Box 1115, Lac du Flambeau, WI 54538. It purports to operate the website www.SkyTrailCash.com and to do business as Sky Trail Cash.

9.      Defendant Skytrail Servicing Group LLC is a limited liability company organized under Texas law. It uses the address 5904 Summerfield Drive, Texarkana, TX 75503. Its registered agent and office is Incorp Services, Inc., 815 Brazos Street, Suite 500, Austin, TX 78701.

10.     Defendant Skytrail Servicing Group LLC is the actual operator of the website www.SkyTrailCash.com and the party that actually does business as Sky Trail Cash.

11.     Defendant William C. Pruett is, on information and belief, the principal executive officer and director of Skytrail Servicing Group LLC. As such, he controls the policies and practices of the company and receives the financial benefit of its operation. He may be found at 6801 Summerhill Road, Texarkana, TX 75503.

12.     Defendant William C. Pruett is, on information and belief, also the owner of Skytrail Servicing Group LLC.

13.     Defendants John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

-2-

## FACTS

14.     On August 10-11, 2021, Plaintiff obtained a $300 loan (Exhibit A) from Sky Trail Cash via its website, www.SkyTrailCash.com.

15.     The loan had a disclosed annual percentage rate of 779.89%. The loan was to be repaid over a four month period. Total payments were $889.73.

16.     Plaintiff applied for the loan from Indiana, via the Internet. The loan proceeds were wired to Plaintiff's bank account in Indiana. Payments were made via ACH debit from Plaintiff's bank account in Indiana.

17.     This is Defendants' standard practice with respect to making and repayment of loans.

18.     Plaintiff made some of the payments, including interest. Sky Trail Cash claims about $376.31 is still due.

19.     At no time did Plaintiff visit any place of business of Sky Trail Cash or the LDF Tribe.

20.     Plaintiff obtained the loan for personal, family or household purposes.

21.     The actual lending operations were carried out and continue to be carried out in locations other than tribal lands.

22.     The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

23.     At most, the LDF Tribe receives a small fee for each loan made.

24.     The bulk of the profits from the lending activities are received by non-members of the LDF Tribe.

25.     The loan agreement (Exhibit A) is a standard form.

26.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018)

("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

27.     Loans to Indiana residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Indiana, and are not in fact made by any Native American tribe.

## INDIANA REGULATION OF LENDING

28.     The Indiana Uniform Consumer Credit Code, Ind. Code §§ 24-4.5-3-201 and 24-4.5-3-508, establishes a maximum loan finance charge of 36% per annum for most consumer loans.

29.     Higher rates on small consumer loans are authorized by Ind. Code § 24-4.5-7-101 et seq., but not as high as 779% (15% of the first $250 of principal and 13% of the next $150 for a loan of at least 14 days, which in the case of Plaintiff's loan would be 381% per annum).

30.     Ind. Code § 24-4.5-7-101 *et seq.*, also imposes other restrictions designed to prevent consumers from becoming overextended.  Defendants do not even purport to comply with these restrictions.

31.     The rate and amount of finance charge provided for in Exhibit A is more than double that permitted in Indiana on any consumer loans.

32.     Ind. Code § 24-4.5-1-201, "Territorial application," provides:

(1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .

(c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.

(d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or

electronic means.

(e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

(f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

(a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

(b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

33.      Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . .  (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the

debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award ***reasonable attorney's fees*** incurred by the debtor. . . .  (Emphasis added)

34.     Additional remedies are provided by Ind. Code § 24-4.5-7-409:

Applicability of other statutory provisions — Penalty for violations of chapter — Equitable relief — Remedies not exclusive.

(1) This section applies to licensees and unlicensed persons.

(2) A person who violates this chapter:

    (a) is subject to the remedies provided in IC 24-4.5-5-202;

    (b) commits a deceptive act under IC 24-5-0.5 and is subject to the penalties listed in IC 24-5-0.5;

    (c) has no right to collect, receive, or retain any principal, interest, or other charges from a small loan; however, this subdivision does not apply if the violation is the result of an accident or bona fide error of computation; and

    (d) is liable to the borrower for actual damages, statutory damages of two thousand dollars ($2,000) per violation, costs, and attorney's fees; however, this subdivision does not apply if the violation is the result of an accident or bona fide error of computation.

The remedies described in this subsection are in addition to all other remedies set forth in

-6-

this article. . . .

(4) The remedies provided in this section are cumulative but are not intended to be the exclusive remedies available to a borrower. A borrower is not required to exhaust any administrative remedies under this section or any other applicable law.

### DEFENDANTS' RENT-A-TRIBE SCHEME

35.    In order to evade the restrictions of Indiana's lending laws, Pruett and Skytrail

Servicing Group LLC devised a scheme to engage in a business model commonly referred to as a

"Rent-a-Tribe" scheme.

36.    In such schemes, non-Native American lenders attempt to circumvent state and

federal laws prohibiting usury by issuing loans in the name of a business purportedly associated with

a Native American tribe and shielded from state law by tribal sovereign immunity.

37.    However, the tribal entity is a mere front for an illegal lending scheme, all

substantive aspects of which are conducted by individuals an entities not connected with any tribe.

38.    The LDF Tribe, via LDF Holdings, actively seeks to rent its name and sovereign

immunity to private parties. It has numerous simultaneously-active "rent-a-tribe" arrangements with

non-tribal investors.

39.    In June 2012, before Skytrail Servicing Group LLC was formed, the website

www.SkyTrailCash.com was registered to My Cash Center, LLC, 1614 Hampton Road, Texarkana,

TX 75501. (Exhibit B) The contact for www.SkyTrailCash.com was John Humphrey, My Cash

Center, LLC, 1614 Hampton Road, Texarkana, TX  75501.

40.    Humphrey is or was Chief Financial Officer of DMP Investments LLC, a company

owned by Pruett.

41.    The website was for a time registered via a proxy, Domains by Proxy. (Exhibit C)

42.    More recently, the website has been registered to LDF Holdings, LLC. (Exhibit D)

43.    The address 1614 Hampton Road, Texarkana, TX 75501, is a commercial building

displaying the name "Roundstone." (Exhibit E)

44.    Roundstone Professional Services Group, LLC previously listed 1614 Hampton

Road, Texarkana, TX 75501, as its address.

45.     Defendant Pruett is managing member of Roundstone.

46.     Roundstone currently lists 5904 Summerfield Drive, Texarkana, TX as its address.

47.     The computer servers used to host www.SkyTrailCash.com are in Dallas, Texas.

(Exhibit F)

48.     On information and belief, the capital used to make the loans made through

www.SkyTrailCash.com comes from Pruett or his business associates.

## SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS

49.     An entity must function as a legitimate "arm of the tribe" in order to fall

under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

50.     To determine if a particular entity is entitled to sovereign immunity, the majority

of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities']

method of creation; (2) their purpose; (3) their structure, ownership, and management, including the

amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to

have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and

(6) whether the purposes of tribal sovereign immunity are served by granting immunity to the

entities." *Breakthrough* at 1183, 1187-88.

51.     An entity that "actually operates to enrich primarily persons outside the tribe or only

a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami

Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

52.     These so-called "tribal lenders" usually do not survive scrutiny when examined

closely, since virtually all business functions occur far from tribal land, by nontribal members, and

overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively

nil.

53.     Where non-tribal individuals and entities control and manage the substantive

lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

54. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

55. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

56. Plaintiff incorporates paragraphs 1-55.

57. Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff is entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

58. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

59. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of "Sky Trail Cash" at more than 36% interest (all of its loans qualify) (c) on or after a date two years prior to the filing of this action.

60. Plaintiff may alter the class definition to conform to developments in the case and discovery.

61.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

62.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

63.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

64.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

65.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

66.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.      A declaration that the loans are void and need not be repaid;

        ii.     Statutory damages;

        iii.    Attorney's fees, expenses and costs; and

        iv.     Such other or further relief as is appropriate.

### **COUNT II – RICO**

67.     Plaintiff incorporates paragraphs 1-55.

68.     This claim is against Pruett, who is the RICO "person."

69.     All loans made in the name of "Sky Trail Cash" to Indiana residents are (a)

unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

70.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

71.     Skytrail Servicing Group LLC, d/b/a "Sky Trail Cash" is an enterprise affecting interstate commerce, in that it is located outside of Indiana and makes loans to Indiana residents via the Internet.

72.     Defendant Pruett is associated with this enterprise.

73.     Defendant Pruett conducted or participated in the conduct of the affairs of this enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

74.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

75.     Plaintiff brings this claim on behalf of a class.

76.     The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of "Sky Trail Cash" at more than 36% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

77.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

78.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

     a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

     b.     Whether Skytrail Servicing Group LLC d/b/a "Sky Trail Cash" is an "enterprise."

      c.       Whether Defendant Pruett is associated with this enterprise.

      d.       Whether Defendant Pruett conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

79.      Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

80.      Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

81.      A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.       Individual actions are not economically feasible.

      b.       Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.       Treble damages;

      ii.       Attorney's fees, litigation expenses and costs of suit; and

      iii.       Such other or further relief as the Court deems proper.


      */s/ Daniel A. Edelman*
      Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Heather Kolbus
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

-14-

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very  relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request  that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman